IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 19, 2012

**LAKKY PHOSY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rutherford County**
**No. F-65217     David M. Bragg, Judge**

**No. M2011-00673-CCA-R3-CD - April 24, 2012**

The Petitioner, Lakky Phosy, appeals the denial of post-conviction relief, contending that
(1) he received ineffective assistance of counsel, and (2) his guilty plea was not knowingly,
intelligently, and voluntarily entered.  Upon review, we affirm the judgment of the post-
conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and
JAMES CURWOOD WITT, JR., JJ., joined.

Gerald L. Melton, District Public Defender; Kevin N. Lowry, Murfreesboro, Tennessee, for
the Petitioner-Appellant, Lakky Phosy.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant
Attorney General; William C. Whitesell, Jr., District Attorney General; Trevor H. Lynch and
Jude Santana, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner was indicted in this cause for two counts of first degree premeditated
murder, two alternate counts of first degree felony murder, criminal attempt to commit first
degree murder, aggravated assault, and use of a weapon during a dangerous felony.  On
October 2, 2009, the Petitioner entered a guilty plea in the Rutherford County Circuit Court
to two counts of second degree murder, a Class A felony, and one count of criminal attempt
to commit first degree murder, a Class A felony.  Pursuant to the plea agreement, the trial
court sentenced the Petitioner to concurrent twenty-five-year sentences for the second degree
murder convictions and a consecutive fifteen-year sentence for the criminal attempt to
commit first degree murder conviction, for an effective sentence of forty years in the
Tennessee Department of Correction.  The Petitioner then filed a timely pro se petition for

post-conviction relief. Counsel was appointed, and the Petitioner filed an amended post-conviction petition. The State responded. Following an evidentiary hearing, the court entered an order denying post-conviction relief on February 16, 2011. The Petitioner then filed a timely notice of appeal.

## FACTUAL BACKGROUND

**Plea Submission Hearing.** The State summarized the facts supporting the Petitioner's guilty plea at the October 2, 2009 plea submission hearing:

> Your Honor, had this matter gone to trial, the State would have offered evidence and presented testimony to establish that on or about June 29[th] of 2008 [sic], [the Petitioner], along with several other individuals, [was] summoned by a man by the name of Somsack [Chanthalay]. Mr. [Chanthalay] had an altercation earlier in the evening [and] wanted retribution[.] He contacted [the Petitioner], asked him to bring a firearm, which was a semi-automatic assault rifle, and contact[ed] several other individuals.
>
> At least four to five other individuals were contacted. They met with Mr. [Chanthalay]. They went to a location where they believed these individuals would be. [The Petitioner] and Mr. [Chanthalay] went down to the party. The firearm was given to another individual who . . . just recently resolved his case.
>
> A fight broke out with [the Petitioner], Mr. [Chanthalay], and individuals at the party. The individual with the firearm shot several times into the crowd, killing two individuals and seriously wounding another.
>
> After which time, the individuals went back to the two separate vehicles they were in. The firearm was turned over to somebody else. It was then hidden, recovered – or ammunition from that firearm that was ejected was recovered on [the] scene. And then live bullets [were recovered] when [the] firearm [that] was initially hidden and then removed on a subsequent occasion was recovered.
>
> [The Petitioner] was developed as a suspect. He was identified by individuals at the scene as being . . . at the party, being involved in the fight. He was subsequently interviewed by Detective James Abbott with the Murfreesboro Police Department, and [he] admitted his involvement in the case. Acknowledging that he did receive a phone call, acknowledging that he did have the firearm, that he did take the firearm and turn it over to another

individual, and that he did go [to the party] with Mr. [Chanthalay], and ultimately got into a fight . . . at the party.

The State informed the court that the Petitioner was going to enter a guilty plea as a Range I, violent offender to two counts of second degree murder and as a Range I, standard offender to one count of attempted first degree murder. Pursuant to the plea agreement, the Petitioner would receive an effective sentence of forty years in the Tennessee Department of Correction. The remaining counts of the indictment would be dismissed.

The Petitioner agreed that the State correctly stated the terms of his plea agreement. The trial court explained the right against self-incrimination, and the Petitioner stated that he was waiving that right to enter his guilty plea. The trial court then asked the Petitioner if trial counsel had talked to him about his case, had informed him of what the State would have to prove in order for a jury to find him guilty of these offenses, and had reviewed the State's evidence against him. The Petitioner responded affirmatively. The Petitioner acknowledged that the State's recitation of the facts was correct. He also acknowledged that trial counsel had reviewed the plea agreement with him. The Petitioner stated that trial counsel had explained the ranges of punishment for each of the charged offenses. He also stated he understood he was facing a sentence of life with or without the possibility of parole if he proceeded to trial. The Petitioner acknowledged that pursuant to the terms of his plea agreement he was receiving two concurrent twenty-five year sentences at 100 percent for the second degree murder convictions and a consecutive sentence of fifteen years at 30 percent for the criminal attempt to commit first degree murder conviction, for an effective sentence of forty years in confinement. He further acknowledged that by pleading guilty he was giving up the rights associated with a jury trial, which included the right to confront witnesses against him, the right to require the State to prove each element of the charged offenses, and the right to testify. The Petitioner then pleaded guilty to two counts of second degree murder and one count of criminal attempt to commit first degree murder.

**Post-Conviction Hearing.** The Petitioner and trial counsel were the only witnesses to testify at the February 4, 2011 post-conviction hearing. A copy of the accepted plea agreement and the transcript from the plea submission hearing were entered as exhibits.

The Petitioner testified that trial counsel met with him at the county jail three or four times prior to entry of his guilty plea. He said he and trial counsel reviewed only four of the twelve witness interviews that the State disclosed during discovery. He also stated that trial counsel neither viewed nor discussed the remaining witness interviews with him because trial counsel claimed they "ran out of time." The Petitioner asserted that trial counsel never returned to the jail to review the remaining witness interviews with him. After entering his guilty plea, the Petitioner discovered that one of the witnesses, whose interview was not reviewed by trial counsel in his presence, corroborated part of the Petitioner's version of the

events the night of the offense. The Petitioner stated that he would not have entered his guilty plea if he had been aware of this corroborating witness.

The Petitioner also claimed that trial counsel did not talk to him about his potential defenses. He said that although trial counsel explained the elements that the State would have to prove to convict him on the charged offenses, trial counsel failed to explain the differences between the lesser included offenses of second degree murder, voluntary manslaughter, and facilitation of second degree murder. The Petitioner stated that at the time he entered his guilty plea he believed that second degree murder and voluntary manslaughter were the same offense. When questioned about whether he asked trial counsel to explain the differences between second degree murder and voluntary manslaughter, the Petitioner responded that he "felt like it was [trial counsel's] duty to explain" those offenses to him prior to his entering his guilty plea.

The Petitioner said he asked trial counsel about a defendant charged with first degree murder in an unrelated case who had received a thirty-year sentence pursuant to a plea agreement. Trial counsel wrote the Petitioner a letter stating that he had approached the district attorney about getting a thirty-year sentence but that the district attorney was only willing to accept an offer from the Petitioner of a forty-year sentence.

The Petitioner acknowledged that trial counsel visited him in the county jail to discuss the plea agreement. However, he stated that trial counsel "really wanted" him to plead guilty and told him that if he accepted the plea agreement he might be able to be released from jail in time to see his grandchildren. When trial counsel told him that he could either accept the plea agreement or spend the rest of his life in incarceration, the Petitioner stated that he felt "real [sic] pressured into signing that deal" and felt as if trial counsel was threatening him. The Petitioner said that trial counsel only spent between five and fifteen minutes explaining the plea agreement to him.

The Petitioner said he was asking the court to allow him to withdraw his guilty plea because trial counsel had never tried to find or interview any of the potential witnesses that he supplied. He stated he had no knowledge of the evidence held by other witnesses because he and trial counsel never watched all of the videos of the witness interviews. Moreover, the Petitioner stated that trial counsel never showed him the statutes for second degree murder, voluntary manslaughter, and "facilitating" second degree murder. The Petitioner claimed that he was unable to make a knowing and intelligent plea because he did not have all of the information regarding these offenses.

On cross-examination, the State asked about the Petitioner's potential witnesses, and the Petitioner named his mother. He acknowledged he did not find out about the witness who

had corroborated part of his story to the police until after he entered his guilty plea. He further acknowledged he neither subpoenaed nor requested that post-conviction counsel subpoena the allegedly corroborating witness to testify at the post-conviction hearing.

The Petitioner acknowledged that trial counsel explained the offenses with which he was charged, the elements the State would have to prove in order to convict him, and the theory of criminal responsibility. The Petitioner also acknowledged he and trial counsel talked about his interviews with police. He admitted he told the police that Chanthalay told him either to bring his AK-47 for the purpose of killing the victim or Chanthalay would come over to his house to get the weapon. He also acknowledged that trial counsel told him that the State would introduce his statement to police at trial. The Petitioner said he was aware prior to his plea that one of his co-defendants was going to testify that the Petitioner arrived with the weapon and asked, ["W]ho's going to be the shooter[?"]

The Petitioner acknowledged that he never informed the trial court that he did not understand the consequences of his guilty plea at the plea submission hearing. He further acknowledged he never informed the trial court that trial counsel never finished discussing his case with him, never reviewed all of the discovery with him, and only met with him four times. He also admitted he told the trial court at the submission hearing that he understood the terms of his plea agreement and that he knew he was facing a sentence of life imprisonment if convicted at trial of first degree premeditated murder. The Petitioner further admitted he never informed the trial court that he had been threatened.

Trial counsel testified he had been an attorney since 1981 and had been the public defender in that judicial district since 1989. He stated he first met the Petitioner on August 11, 2008, and said he and the Petitioner never had any communication problems during the case.

Trial counsel stated that he had documentation showing that he met with the Petitioner in person fifteen times and that some of these meetings lasted several hours. He stated he brought the investigator from the public defender's office with him for two of the meetings with the Petitioner. During these meetings the Petitioner mentioned his mother as a possible witness because at the time of the offense she had been dating one of the co-defendants "whose whereabouts were unknown." Trial counsel said that the Petitioner never mentioned any other potential witnesses because he was not acquainted with any of the individuals who were present at the time of the offense. He said he and the Petitioner discussed the possibility of finding some of the individuals who were on the premises at the time of the offense, and the Petitioner's sister had indicated to the investigator that she might be able to find some of these people. However, despite these efforts, no witnesses were located.

Trial counsel stated that the police interviewed all of the witnesses who admitted they were present at the time of the offense. Trial counsel acknowledged he did not talk to those witnesses. However, he said he reviewed all the materials related to the witness interviews, visited the scene of the offenses, and attempted to locate witnesses on his own. Trial counsel stated he and the Petitioner reviewed the discovery materials at least two times. During one of their meetings, he talked to the Petitioner about the witness interviews from 8:30 a.m. until 1:30 p.m. when the Petitioner stopped the meeting because he had a scheduled visit with his children. He also talked to the Petitioner about the witness interviews on other occasions until the Petitioner told him that "he had seen or heard enough."

Trial counsel stated that the Petitioner never informed him of a witness that corroborated his version of the events when they were reviewing the discovery. He also said he did not recall any of the witness statements being helpful to the Petitioner. Trial counsel said he and the Petitioner discussed the potential defenses in his case, which included the defenses of duress and lack of knowledge.

Trial counsel said he talked to the State several times about possible plea agreements. He said he received an offer from the State prior to the first plea date. However, because discovery had not been completed, the plea date was reset. Following the first plea date, trial counsel and the Petitioner discussed the fact that a defendant charged with first degree murder in a similar but unrelated case had received a favorable sentence. When trial counsel talked to the district attorney about the possibility of the Petitioner receiving an offer similar to the one received by this defendant, the district attorney told trial counsel that a forty-year sentence was "as low as he could go." Trial counsel then wrote the Petitioner a letter informing him that the district attorney "would not make him an offer as low as [the Petitioner] wanted" but that he would accept an offer of a forty-year sentence from the Petitioner.

Trial counsel said he left a copy of a general plea agreement form with the Petitioner to study in jail because he felt that the Petitioner was "an intelligent individual." He told the Petitioner that the form would be completed with the details of his plea agreement if he were able to settle the Petitioner's case. Trial counsel stated that the Petitioner was able to review the form for "several days." Prior to entry of the Petitioner's guilty plea, trial counsel completed an identical copy of the form and thoroughly explained the terms of the plea agreement to the Petitioner. He said he had plenty of time to explain the terms of the plea agreement to the Petitioner because the Petitioner made the decision to plead guilty the night before he entered his guilty plea in court. Trial counsel said he read the plea agreement to the Petitioner but could not definitively state that the Petitioner read the plea agreement form himself.

Trial counsel stated that the plea agreement accepted by the Petitioner had been "on the table" for approximately one week prior to the plea submission hearing. On October 1, 2009, he met with the Petitioner and prepared for trial for more than five hours. When he returned to the jail at 10:30 p.m. that night, the Petitioner decided to plead guilty.

On cross-examination, trial counsel said he and the Petitioner discussed the terms of the plea agreement and the consequences of pleading guilty to second degree murder and criminal attempt to commit first degree murder. Although trial counsel gave the Petitioner the chance to review the completed plea agreement and to ask him about the agreement, the Petitioner did not ask him any questions.

Trial counsel stated he reviewed the substantial discovery material provided by the State, which included hundreds of pages of documents and several recorded witness interviews. He also said that the lead investigator assigned to the case helped him review all of the discovery materials. Trial counsel stated he personally reviewed the discovery material three or four times and reviewed it with the Petitioner at least two times. He also stated that he was not aware of any witness statements that were contrary to the State's theory of the case.

At the conclusion of the evidentiary hearing, the post-conviction court denied relief. The court stated the following in its written order denying post-conviction relief:

> 2. [Trial counsel] met with Petitioner on several occasions, reviewed all discovery, and is aware of no discovery that contradicts the State's theory of the case. Petitioner claims [trial counsel] did not make him aware of "other options" but presented no clear and convincing evidence of any other options [trial counsel] should have considered. Petitioner received multiple copies of his Agreement to review and consider before entering his plea. Petitioner admits [trial counsel] explained what the State would be required to prove and the possible ranges of punishment. [Trial counsel] answered all of Petitioner's questions and Petitioner chose not to ask any more [questions]. Petitioner presented no clear and convincing evidence of any unexplored defense or any helpful testimony from the unnamed "recently discovered" witness. Therefore, Petitioner's argument of ineffective assistance of counsel is without merit.
>
> 3. Petitioner testified at his guilty plea that he understood his right against self-incrimination, his various rights associated with a jury trial, and his right to appeal. Petitioner testified he understood what the State would have to prove to find him guilty, he agreed with the facts as announced by the State,

and he had discussed his case and his plea with his attorney. All of the evidence shows Petitioner's plea was knowing and voluntary.

In its order denying relief, the post-conviction court found that there was "no clear and convincing proof that trial counsel's performance was deficient, that Petitioner was prejudiced by trial counsel's performance, or that Petitioner's guilty plea was not knowing and voluntary."

## ANALYSIS

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

**I. Ineffective Assistance of Counsel.** The Petitioner contends that trial counsel provided ineffective assistance of counsel in failing to investigate any of the witnesses in the case, in failing to review the discovery packet with the Petitioner, and in failing to explain the terms and consequences of the plea agreement. The State responds that the record supports the post-conviction court's finding that the Petitioner failed to establish by clear and convincing evidence that counsel's performance was deficient. We agree with the State.

Vaughn repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

First, the Petitioner contends that trial counsel was ineffective in failing to investigate any of the witnesses in the case. However, the Petitioner failed to present any witnesses at the post-conviction hearing. This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is the only way for the petitioner to establish:

(a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id. The post-conviction court noted that the Petitioner failed to present any witnesses at the hearing and determined that the Petitioner presented no clear and convincing evidence of any witnesses that would have been helpful to his case. The record supports this determination. The Petitioner has not proven that trial counsel's representation was deficient or that he was prejudiced by trial counsel's representation as required by Strickland. Therefore, he is not entitled to relief on this issue.

Second, the Petitioner argues that trial counsel was ineffective in failing to review the discovery materials with the Petitioner. The record shows that trial counsel met with the Petitioner approximately fifteen times and that some of these meetings lasted several hours. Trial counsel's accredited testimony showed that he reviewed the hundreds of pages of discovery materials three or four times himself and at least two times with the Petitioner. He said he never found any evidence in the discovery materials that was contrary to the State's theory of the case.

Finally, the Petitioner contends that trial counsel was ineffective in failing to explain the terms and consequences of his plea agreement. The record shows that trial counsel explained to the Petitioner the terms of the plea agreement several times prior to the Petitioner's entering his guilty plea. Trial counsel gave the Petitioner a copy of the basic plea agreement form to read several days before he made the decision to plead guilty. The plea agreement offered by the State had been "on the table" for approximately one week prior to the Petitioner's entry of his guilty plea. In addition, trial counsel spent several hours with the Petitioner the day before the Petitioner entered his plea. Once the Petitioner decided to enter his plea, trial counsel reviewed the agreement with him in an unhurried fashion.

**II. Voluntariness of Guilty Plea.** The Petitioner argues that his guilty plea was not knowingly, voluntarily, and intelligently entered because trial counsel failed to explain how the offense of second degree murder differed from the offense of voluntary manslaughter and because he was not informed of his constitutional rights prior to entering his guilty plea. In response, the State argues that the record supports the post-conviction court's finding that the Petitioner knowingly, voluntarily, and intelligently entered his guilty plea. We agree.

-10-

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

Here, the Petitioner asserts that his guilty plea was not knowingly, voluntarily, and intelligently entered because trial counsel failed to explain how the offense of second degree murder differed from the offense of voluntary manslaughter and because he was not informed of his constitutional rights prior to entering his guilty plea. However, the record shows that the trial court thoroughly questioned the Petitioner about the terms of his plea agreement and the consequences of his guilty plea. The Petitioner acknowledged at the plea submission hearing that he was facing a sentence of life imprisonment if he proceeded to trial. The trial court systematically explained the rights that the Petitioner would be waiving if he pleaded guilty, and the Petitioner responded that he clearly understood these rights and the consequences of his guilty plea before pleading guilty to two counts of second degree murder and one count of criminal attempt to commit first degree murder.

Moreover, the transcript from the post-conviction hearing shows that trial counsel explained the terms and the consequences of the plea agreement to the Petitioner several

times and gave the Petitioner a copy of the basic plea agreement form to read several days before the entry of his plea. Trial counsel informed the Petitioner of the terms of the plea agreement approximately one week prior to the entry of his guilty plea, spent several hours with the Petitioner the day before he entered his plea, and discussed the elements of the second degree murder offense and the consequences of pleading guilty to that offense. The Petitioner was charged with two counts of first degree premeditated murder, two counts of first degree felony murder, criminal attempt to commit first degree murder, aggravated assault, and use of a weapon during a dangerous felony but pleaded guilty to two counts of second degree murder and one count of criminal attempt to commit first degree murder in exchange for a forty-year sentence. Finally, the record shows that despite trial counsel's attempt to get an offer of thirty-years, the district attorney was unwilling to accept an offer from the Petitioner less than forty years. Upon review, the record shows that the Petitioner's plea was intelligent, knowing, and voluntary. Accordingly, the Petitioner is not entitled to relief on this issue.

The ruling of the post-conviction court is supported by the record. We conclude that the Petitioner has not met his burden of proving that he received ineffective assistance of counsel or that his plea was unknowing and involuntary.

**Conclusion.** Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE